UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MALDONADO,<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>    Defendant. | Case No. 1:23-cv-01577-HBK<br><br>ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[2]<br><br>(Doc. Nos. 12, 14) |

    Jose Luis Maldonado eeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 12, 14-15). For the reasons stated, the Court grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and orders this matter

---

[1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

remanded to the Commissioner of Social Security for further administrative proceedings.

## I.  JURISDICTION

Plaintiff filed for disability insurance benefits and supplemental security income on April 27, 2021, alleging an onset date of October 1, 2020.  (AR 232-43).  Benefits were denied initially (AR 64-101, 142-50), and upon reconsideration (AR 102-41, 152-57).  Plaintiff appeared telephonically before an Administrative Law Judge ("ALJ") on October 18, 2022.  (AR 40-63).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  The ALJ issued an unfavorable decision (AR 12-39), and the Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II.  BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 46 years old at the time of the hearing.  (*See* AR 281).  He graduated from high school.  (*See* AR 294).  Plaintiff has past relevant work history as a merchandise deliverer, store's laborer, and industrial truck operator.  (AR 46-49, 57).  Plaintiff testified that he cannot work because his fingers get numb, and he has anxiety and feels like he's going to faint.  (AR 46).  He reported dizzy spells seven times a week when he feels nervous, and it takes him 15 to 20 minutes to calm down.  (AR 50-51).  Plaintiff testified that he gets nervous around a lot of people, and he has depression once in a while.  (AR 51-52).  He can run quick errands and only in stores that do not have a lot of people.  (AR 52-53).  He reported his fingers get numb nearly every day, multiple times throughout the day; and he has arthritis in his lower back.  (AR 53-54).  Plaintiff testified that he forgets things easily including directions from other people.  (AR 55).

## III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity,"

the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety; depression; carpal tunnel syndrome; obesity; obstructive sleep apnea; hypertension; hyperlipidemia; status-post hernia repair; gout; liver disease; hypothyroidism; and lumbar spine degenerative disc disease with radiculopathy. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: he is capable of frequently handling, fingering, feeling, and grasping with the bilateral hands; he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; he is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline,

5

> such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; he is able to make occasional simple work-related decision in a job involving only occasional changes in a routine work setting; he is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; and he is capable of no more than occasional interaction with the general public, co-workers, and supervisors but is incapable of performing tasks requiring conflict resolution, requiring him to direct the work of others or persuade others, or requiring him to work jointly or cooperatively with a co-worker or co-workers on tandem tasks or in a team environment.

(AR 25-26). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 31). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: marker, routing clerk, housekeeping cleaner. (AR 33). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of the decision. (AR 34).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's mental and physical symptom claims; and

2. Whether the ALJ properly considered the medical opinion of Mircea Truta, M.D. (Doc. No. 12 at 8-17).

## VII.   DISCUSSION

**A. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (AR 27). Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of mental and physical dysfunction. (Doc. No. 12 at 8-13). The Court agrees.

First, Plaintiff argues the ALJ's "mere recitation of the objective medical evidence was not a clear and convincing reason for discounting Plaintiff's physical symptoms." (Doc. No. 12 at 12). It is well-settled in the Ninth Circuit that ALJs are not required "to perform a line-by-line

7

exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.")).  However, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination.").  Here, a plain reading of the ALJ's decision indicates that while he identified Plaintiff's claims of carpal tunnel syndrome, the analysis is almost entirely comprised of a chronological summary of the medical evidence including diagnosis of carpal tunnel syndrome, injections to treat carpal tunnel syndrome in June 2022 with no improvement in symptoms, complaints of numbness and tingling in his bilateral thumbs and index fingers during the same time period, and full strength in all extremities with no evidence of muscle wasting or atrophy in August 2022.[3]  (AR 28, 1736, 1742, 1747-48, 1757).  Thus, the ALJ's general finding that Plaintiff's carpal tunnel symptom symptom claims were not supported by the objective medical evidence, without explanation as to how the medical evidence undermined his testimony, was not a clear and convincing reason, supported by substantial evidence, to reject his symptom claims.

Second, Plaintiff argues the ALJ's rejection of Plaintiff's mental health claims was not

---

[3] The ALJ also considered Plaintiff's alleged physical impairments of sleep apnea, status-post hernia surgery, hypertension, hyperlipidemia, gout, hypothyroidism, liver disease, and obesity.  (AR 28-29).  However, as Plaintiff does not specifically challenge those findings in her opening brief the Court declines to consider them here.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

supported by clear and convincing evidence because "the ALJ ignored all of Plaintiff's abnormal mental status examinations." (Doc. No. 12 at 9-10). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not "cherry-pick" aspects of the medical record and focus only on those aspects that fail to support a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Defendant correctly notes that the ALJ did acknowledge Plaintiff's reports and treatment providers' observations of panic attacks, feelings of hopelessness, fear of fainting/dizziness, concentration difficulty, emotional withdrawal or isolation, insomnia, and fatigue; as well as considering mental status examination findings observing that Plaintiff was alert and oriented, cooperative, "generally normal affect," "coherent in his thoughts," goal-directed, good insight, fair memory, fair insight, fair judgment, no hallucinations or delusions, euthymic mood, and well-organized and goal-directed thought process. (AR 29).

However, in support of this finding, the ALJ generally cites more than 750 pages of medical records over the course of more than two years of treatment, including ongoing normal and abnormal findings on mental status examination. (AR 29, 785-845, 970-1357, 1362-1730, 1736-1756). As noted above, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination."). Here, to the extent the ALJ specifically found that the objective evidence did not support Plaintiff's symptom claims, a general citation to hundreds of treatment records that include both normal and abnormal findings, without identification or explanation as to how the medical evidence undermined his alleged mental health symptom claims was arguably not a clear and convincing reason, supported by substantial evidence, to reject his mental health symptom claims.

In addition, Plaintiff correctly notes that the ALJ may not discredit a claimant's testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. (Doc. No. 12 at 10); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Defendant contends the ALJ properly considered objective medical evidence as a reason to discount Plaintiff's symptom claims, along with inconsistency with Plaintiff's daily activities, inconsistent statements undermining Plaintiff's mental health claims,[4] and conservative mental health treatment. (Doc. No. 14 at 5-6). However, Defendant's argument appears partially based on the ALJ's ultimate conclusion, after evaluating the medical opinion evidence, that "[c]onsideration of the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record." (AR 31); *Rollins*, 261 F.3d at 857 (ALJ may consider a claimant's activities that undermine reported symptoms). *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of "conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment); 20 C.F.R. § 416.929(c)(4).

While the ALJ properly referenced factors relevant to his assessment of Plaintiff's subjective allegations pursuant to Social Security Rule (SSR) 16-3p and 20 C.F.R. § 416.929(c)(3), 404.1529(c)(3) (AR 27), he did not identify the specific testimony that he found

---

[4] Defendant argues that Plaintiff's symptom claims were undermined by "inconsistencies in the evidence." (Doc. No. 14 at 5). The ALJ may consider inconsistencies in the evidence and "the extent to which there are any conflicts between" plaintiff's statements and statements by medical sources about how symptoms affect plaintiff. 20 C.F.R. § 416.929(c)(4)  Here, presumably in support of his argument, Plaintiff generally cited the ALJ's summary of the medical evidence that included Plaintiff's denial of anxiety and depression in February 2021, as compared to his report of anxiety in October 2021. (AR 29). However, as argued in Plaintiff's reply, the ALJ "did not identify inconsistencies in Plaintiff's statements to providers, or the type and effectiveness of mental health treatment, as reasons for discounting his allegations of mental dysfunction." (Doc. No. 15 at 40). Rather, a plain reading of the ALJ's decision indicates he was summarizing the mental health treatment record, including Plaintiff's statements. Thus, the Court declines to consider this "reason" as it was not offered by the ALJ in the decision as reasons to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

not to be credible, nor did he offer explanations for how Plaintiff's reported activities of daily living and "treatment modalities" (AR 31) undermine Plaintiff's specific symptom claims, particularly as to her claimed mental health limitations. *See Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Brown-Hunter*, 806 F.3d at 494.

Moreover, even were the Court to consider the "reasons" given by the ALJ as part of the summary of medical evidence, as argued by Defendant, it is unclear that they are supported by substantial evidence. As to daily activities, in the summary of the medical evidence the ALJ references Plaintiff's reports that he "lifted weights" at two treatment visits, without any further information, and another general report in August 2022 that his carpal tunnel just started to get worse but previously had only "minimal" effect on his "daily life." (AR 28, 1751, 1759, 1726). Singular discrepancies fail to justify the wholesale dismissal of a claimant's testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006). In addition, the ALJ failed to identify or explain with requisite specificity any "specific conflicts between" Plaintiff's daily activities and her reported *mental* health symptoms. (Doc. No. 15 at 3; *See* AR 29).

As to "treatment modalities," the ALJ cites a single recommendation that Plaintiff should undergo physical therapy for his carpal tunnel syndrome, and generally finds, with general citation to more than 750 pages of mental health treatment for more than two years, that mental health treatment was "conservative and consisted of counselling and prescribed psychotropic medications." (AR 28-29). As above, a singular recommendation that Plaintiff should undergo physical therapy would not rise to the level of substantial evidence of conservative treatment so as to undermine Plaintiff's carpal tunnel symptom claims (*See Robbins*, 466 F.3d at 883-84); and, as noted by the ALJ, Plaintiff also received the arguably less conservative treatment of injections for his carpal tunnel syndrome (AR 1747-48). Moreover, Plaintiff correctly notes that the ALJ "did not explicitly find that the prescribed treatment was inconsistent with Plaintiff's reported mental dysfunction," and further argues that "[m]ental health treatment by way of counseling and prescribed psychiatric medications was not 'conservative,' nor was it inconsistent with his degree

of mental dysfunction." (Doc. No. 15 at 4); *see Scott H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4249276, *4 (D. Or. June 29, 2023) (finding ALJ erred by relying on "conservative treatment" with therapy and prescription medication as a reason to discount Plaintiff's mental health symptom testimony and noting "this does not fit the Ninth Circuit's mold of 'conservative treatment' as a matter of law.") (collecting cases).

Thus, as argued by Plaintiff, to the extent the ALJ relied on "objective evidence" to discount Plaintiff's mental and physical symptom claims, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47; *Brown-Hunter*, 806 F.3d at 489. As discussed above, the additional "reasons" given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

Based on the foregoing, the Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's mental and physical symptom claims.

**B. Additional Assignment of Error**

Plaintiff also argues the ALJ failed to properly evaluate the treating source opinion of Mircea Truta, M.D. (Doc. No. 12 at 13-17). Because the ALJ's consideration of this issue is interrelated with a reevaluation of Plaintiff's symptom claims, including a review of the medical evidence as it relates to Plaintiff's subjective complaints, the Court declines to address this challenge in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's mental and physical symptom claims and conduct a new sequential analysis, including a reassessment of the medical opinion evidence, if necessary.

**C. Remedy**

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings. (Doc. No. 12 at 18); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further

administrative proceedings would serve a useful purpose). The Court agrees. Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's mental and physical symptom claims, as well as all relevant medical evidence, including medical opinions. The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 14) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:    December 2, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

13